IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

DEBORAH L. KINNISON,          §
                             §
        Plaintiff,           §    Civil Action
                             §    No. C-07-381
v.                           §
                             §
HUMANA HEALTH PLAN OF TEXAS,  §
INC., et al.,                §
                             §
        Defendants.          §

### ORDER

On this day came on to be considered Defendant Prest & Associates, Inc.'s (hereinafter, "Prest") motion to dismiss and motion for summary judgment on Plaintiff Deborah Kinnison's various causes of action against Defendant Prest (D.E. 23)[1]  For the reasons set forth below, Prest's motion for summary judgment is GRANTED as to all of Plaintiff's claims against Prest, and Plaintiff's claims against Prest are hereby DISMISSED.

I.  **Jurisdiction**

The Court has federal question jurisdiction over this case pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 1332(e), because Plaintiff alleges claims under the Employee Retirement Income

---

[1]Prest originally filed its motion as both a motion to dismiss and a motion for summary judgment.  Specifically, Prest sought to dismiss certain of Plaintiff's claims pursuant to Federal Rule of Civil Procedure 12(b)(6), and sought summary judgment on the remainder of Plaintiff's causes of action, pursuant to Federal Rule of Civil Procedure 56.  As set forth below, the Court will treat Prest's motion solely as a motion for summary judgment, not as a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6).

Security Act of 1974, 29 U.S.C. §§ 1001 <u>et</u> <u>seq.</u> ("ERISA").[2]  The
Court has supplemental jurisdiction over Plaintiff's state law
claims pursuant to 28 U.S.C. § 1367.

## II.  **Factual Background**

The following facts are not in dispute.  At the time relevant
to this dispute, Plaintiff Deborah Kinnison was a Corpus Christi
resident and an employee of Mike Harvey Oil & Gas.  (DX-C[3], Prest
External Review Report).  Plaintiff was enrolled in the Mike W.
Harvey Oil & Gas group health insurance plan (Group No. 568322),
administered by Humana Insurance Company ("Humana").  (DX-A,
Cornelissen Aff.; DX-B, Request for External Review; Prest External
Review Report).  The group health insurance plan for Group 568322
is a plan covered by ERISA.  (<u>Id.</u>).[4]

---

[2]29 U.S.C. § 1332(e) provides that "the district courts of
the United States shall have exclusive jurisdiction of civil
actions under this [ERISA] subchapter brought by the Secretary or
by a participant, beneficiary, fiduciary, or any person referred
to in section 1021(f)(1) of this title."

[3]For ease of reference, Defendant's exhibits are referred to
with the designation "DX," and Plaintiff's exhibits are referred
to with the designation "PX."

[4]Plaintiff does not dispute that the plan purchased by Mike
W. Harvey Oil & Gas is a plan covered by ERISA.  "ERISA applies
to any employee benefit plan if it is established or maintained
by an employer or an employee organization engaged in commerce or
in any industry or activity affecting commerce." <u>Mem'l Hosp.</u>
<u>Sys. v. Northbrook Life Ins. Co.</u>, 904 F.2d 236, 240 (5th Cir.
1990); <u>see also</u> 29 U.S.C. § 1003(a).  ERISA Section 3(1) defines
a covered "employee welfare benefit plan" as "any plan, fund, or
program ... established or maintained by an employer ... to the
extent that such plan, fund, or program was established or is
maintained for the purpose of providing [certain benefits] for
its participants or their beneficiaries...".  29 U.S.C. §

On August 8, 2005, Plaintiff entered the Betty Ford Center in Rancho Mirage, California for treatment for drug and alcohol dependence. (Prest External Review Report). From August 8 to 12, 2005, Plaintiff received inpatient detoxification treatment at the Betty Ford Center. (Id.). From August 13 to September 7, 2005, Plaintiff received inpatient rehabilitation services at the Betty Ford Center. (Id.). Plaintiff later submitted her claim for coverage to Humana. (Cornelissen Aff., ¶¶ 3-4).

Plaintiff's claim was initially reviewed by Corphealth, Inc. ("Corphealth"), which provides utilization review services for Humana. (Id., ¶ 4). Corphealth, via its physician reviewer, did certify Plaintiff's August 8-12, 2005 treatment at the Betty Ford Center, but did not certify the August 13 to September 7, 2005 inpatient rehabilitation services portion of Plaintiff's treatment. (Id.). Plaintiff appealed this decision to Humana, and Humana arranged for an external independent review of Plaintiff's claim. (Id., ¶ 5). Humana sent a "Request for External Review" to Defendant Prest, an "independent review organization." (Id.;

---

1002(1). The plan in this case meets the criteria of 29 U.S.C. § 1003(a) and 1002(1), and the criteria established by the Fifth Circuit to establish whether a plan is covered by ERISA. See Meredith v. Time Ins. Co., 980 F.2d 352, 355 (5th Cir. 1993) (the plan exists, is not exempted from ERISA coverage by the Department of Labor Safe Harbor provisions, and the plan satisfies the primary elements of an ERISA employee benefit plan). (The DOL safe harbor provisions do not exempt this plan from ERISA coverage because the employer paid at least 50% of premiums for covered employees).

Request for External Review).  Humana requested a reviewer with a specialty in addiction psychiatry, licensed in Texas.  (Request for External Review).   Two board certified physician reviewers conducted a "record review" on behalf of Prest.  (Prest External Review Report).   The Prest report states that "beyond the last authorized day of 08/12/05, the patient was medically stable, cooperative, compliant and motivated.   She was engaged in treatment.   She was not suicidal, parasuicidal, homicidal, psychotic, manic or impaired in the performance or activities of daily living.   Thus, as of 08/13/05 ... [s]he could safely have been treated in an intensive outpatient setting."  (Id., p. 2).[5] On April 28, 2006, Humana notified Plaintiff that it denied Plaintiff's appeal.  (Cornelissen Aff., ¶ 7).

## III. **Procedural Background**

     This is the second lawsuit filed by Plaintiff regarding the

---

[5]While it is not outcome determinative in this case, the Court notes that Plaintiff's Complaint alleges that Prest was not informed of Plaintiff's past unsuccessful outpatient treatment for chemical dependency.  (See, e.g., Complaint, ¶ 13, stating that "Defendant Humana ... fail[ed] to provide Prest & Associates, Inc. the medical records indicating that prior outpatient treatment had not been successful"; ¶ 24, stating that Prest did not "consid[er] the unsuccessful outpatient treatment.").  However, the Prest External Review Report states in the case summary section that "In 12/2004, [Plaintiff] was in an outpatient program which led to 8 months of sobriety, at which time she relapsed and apparently at that point, she was admitted to Betty Ford."  (Prest External Review Report, p. 1). Accordingly, contrary to Plaintiff's allegations, Prest was aware of Plaintiff's prior outpatient treatment prior to Plaintiff's admission to the Betty Ford Center.  (Id.).

same factual situation.

## A.   First Lawsuit, Case No. 06-cv-355

Plaintiff filed an almost-identical suit in Case No. 06-cv-355, <u>Deborah L. Kinnison v. Humana Health Plan of Texas, Inc., et al.</u>, before this Court.  The case was originally filed in Texas state court on June 29, 2006.  The Humana Defendants removed the case on August 11, 2006, on the grounds that at least one of Plaintiff's claims was completely preempted by ERISA.[6]

Plaintiff filed her First Amended Original Complaint ("Amended Complaint") in Case No. 06-355 on January 11, 2007 (Case No. 06-355, D.E. 15).  In the Amended Complaint, Plaintiff asserted the following Texas state law claims against the Humana Defendants: negligence, gross negligence, fraud, breach of contract, violations of the Texas Deceptive Trade Practices Act ("DTPA"), and violations of the Texas Insurance Code.  (Amended Complaint, ¶ 15).  Plaintiff did not bring an ERISA claim against the Humana Defendants.

The Humana Defendants filed a motion for summary judgment on March 30, 2007 (Case No. 06-355, D.E. 20).[7]  The Humana Defendants

---

[6]The case was originally assigned to Chief Judge Hayden Head.  Judge Head recused on October 4, 2006, and the case was assigned to this Court (Case No. 06-355, D.E. 9).

[7]The Humana Defendants' motion was originally styled as a motion to dismiss, and in the alternative, a motion for summary judgment.  The Court issued an Order on April 3, 2007, stating that the Court would treat Defendants' motion as a motion for summary judgment, rather than as a motion to dismiss (Case No. 06-355, D.E. 21).

requested that Plaintiff's state law claims be dismissed as preempted by ERISA.  Plaintiff filed her late response to the Humana Defendants' motion on May 1, 2007 (Case No. 06-355, D.E. 23).

On May 8, 2007, the Court GRANTED the Humana Defendants' motion for summary judgment and DISMISSED all of Plaintiff's state law claims, on the grounds that they were preempted by ERISA Section 514.  (Case No. 06-355, D.E. 26).  Specifically, the Court held that all of Plaintiff's state law claims against the Humana Defendants "relate[d] directly to Plaintiff's membership in the [Mike Harvey Oil & Gas] ERISA plan, and f[ell] squarely within the realm of ERISA conflict preemption."  (Id., p. 12).  On May 9, 2007, in accordance with its Order dismissing all of Plaintiff's claims against Defendants, the Court entered final judgment DISMISSING the case in its entirety.  (Case No. 06-355, D.E. 27). The case was terminated on May 9, 2007.

On May 29, 2007, Plaintiff filed a "Motion for Rehearing" (Case No. 06-355, D.E. 32), asking the Court to reconsider its Order granting summary judgment to the Humana Defendants. Plaintiff's motion for rehearing was filed more than ten days after the entry of judgment, so the Court treated it as a "motion for relief from judgment" under Federal Rule of Civil Procedure 60(b). See Ford v. Elsbur, 32 F.3d 931, 937 (5th Cir. 1994) (a motion to alter or amend judgment that is filed more than ten days after

entry of judgment is to be reviewed under Rule 60(b)).  Because Plaintiff only attempted to re-argue the same points she made or could have made in her response to the Humana Defendants' motion for summary judgment, the Court did not find the "extraordinary circumstances" necessary for relief under Rule 60(b).  Accordingly, on June 8, 2007, the Court DENIED Plaintiff's motion for rehearing (Case No. 06-355, D.E. 32).

Also on May 29, 2007, Plaintiff filed a "Motion to Reopen Case" (Case No. 06-355, D.E. 31).  In her motion, Plaintiff argued that the case was "prematurely closed" because she had thirty days to file a motion for reconsideration of the Court's Order granting summary judgment.  (Id., ¶¶ 2, 5).  On June 8, 2007, the Court DENIED Plaintiff's motion to reopen the case (Case No. 06-355, D.E. 34).  The Court's Order noted that Plaintiff had ten days from entry of judgment to file a motion for reconsideration under Rule 59(e), and that the "thirty day" time period raised by Plaintiff was for an appeal to the United States Court of Appeals for the Fifth Circuit, not for filing a motion to reconsider before this Court.  (Id.).

Finally, on May 29, 2007, Plaintiff also filed a "Motion for Leave to File Second Amended Original Complaint" (Case No. 06-355, D.E. 29).  Twenty days after final judgment had been entered dismissing the entire case, Plaintiff filed a motion seeking to amend her complaint to add an ERISA claim for relief.  (Id., ¶ 2).

On June 8, 2007, the Court DENIED Plaintiff's motion for leave to file, on the grounds that the Court "already entered final judgment in this case, DISMISSING the action in its entirety". (Case No. 06-355, D.E. 33).

**B.   Second Lawsuit, Case No. 07-cv-381**

On October 1, 2007, Plaintiff filed her Original Complaint in the case currently before the Court, Case No. 07-cv-381, <u>Kinnison v. Humana Health Plan of Texas, Inc., et al.</u>[8] In this second case, Plaintiff named the same three Humana Defendants as she did in the first lawsuit, along with newly added Defendant Prest.  In this case, Plaintiff brings a claim against Prest and the Humana Defendants under ERISA Section 502(a)(3).  Plaintiff also seeks penalties for failure to provide certain documents under ERISA Section 502(c), and attorney's fees and costs under ERISA Section 502(g)(1).[9]   Plaintiff also brings claims against the Humana

_____

[8]The case was originally assigned to Chief Judge Hayden Head.  Judge Head recused on December 3, 2007, and the case was assigned to this Court.  (D.E. 9).

[9]The Court notes that the ERISA claims in Plaintiff's Complaint are not clear, and it is difficult to discern what claims Plaintiff intends to bring against Prest and the Humana Defendants.  The only ERISA sections Plaintiff refers to in her Complaint are Sections 502(a)(3), 502(g)(1) and 502(c). (Complaint, pp. 4-8).  Accordingly, the Court construes Plaintiff's Complaint as bringing claims against all Defendants under ERISA Sections 502(a)(3), 502(g)(1) and 502(c). Plaintiff's Complaint does not allege a claim against Prest under ERISA Section 502(a)(1)(B).  However, because Plaintiff's Complaint is so unclear, in an abundance of caution, in this Order the Court addresses and DISMISSES any ERISA Section 502(a)(1)(B) claim that Plaintiff intended to bring against

Defendants for breach of fiduciary duty, and against Prest for Texas state law negligence, misrepresentation and violation of the Texas Deceptive Trade Practices Act ("DTPA").[10]  Plaintiff seeks attorney's fees and costs under these Texas state law theories.

The Humana Defendants filed their answer to Plaintiff's Complaint on November 14, 2007 (D.E. 3), and Prest filed its answer on November 19, 2007 (D.E. 5).  Both Prest and the Humana Defendants asserted the affirmative defense of res judicata in their answers.  Prest and the Humana Defendants also asserted counterclaims against Plaintiff for attorney's fees and costs, pursuant to ERISA Section 502(g).  (D.E. 3, ¶¶ 15-20, D.E. 5, ¶¶ 14-20).

On December 17, 2007, Plaintiff filed a motion for summary judgment on the affirmative defense of res judicata asserted by Prest and the Humana Defendants (D.E. 7).  Plaintiff argued that the claims in her current suit were not precluded by res judicata,

---

Prest.

[10]Plaintiff's Complaint is unclear as to exactly what state law claims Plaintiff intends to bring against Prest.  (Complaint, pp. 5-7).  Specifically, Plaintiff includes language regarding Prest's alleged "failure to properly investigate Plaintiff's claims" and "fail[ure] to continue to review or consider evidences [sic]."  (Complaint, ¶¶ 21, 24).  It appears that Plaintiff intends these claims of "failure to investigate" to form the basis for her negligence and misrepresentation claims against Defendant Prest.  The Court will accordingly treat Plaintiff's Complaint as bringing claims against Prest for negligence, misrepresentation, and violation of the DTPA.  This appears to be the most accurate reading of Plaintiff's Complaint.

because there was no final decision on the merits of the claims, and because she did not have an opportunity to bring an ERISA claim in the first suit.  (Id., ¶¶ 9, 11, 13).

On January 4, 2008, the Humana Defendants and Prest filed their responses to Plaintiff's motion for summary judgment (D.E. 16, 17).  Included with their responses, the Humana Defendants and Prest both brought cross-motions for summary judgment, arguing that Plaintiff's claims against them should be dismissed under the doctrine of res judicata (D.E. 16, ¶¶ 17-28, D.E. 17, ¶¶ 8-15). Despite receiving numerous extensions, Plaintiff never responded to the cross-motions for summary judgment.[11]

On June 17, 2008, the Court DENIED Plaintiff's motion for summary judgment in its entirety, GRANTED the Humana Defendants' cross-motion for summary judgment, and DENIED Prest's cross-motion for summary judgment on the issue of res judicata.  (D.E. 29).  The

_____

[11]Plaintiff's responses to the cross-motions for summary judgment were originally due on January 24, 2008.  However, as a result of the medical issues of Plaintiff's counsel, the Court granted Plaintiff an extension until May 9, 2008 to respond to Prest and the Humana Defendants' cross-motions for summary judgment.  (D.E. 26).  On May 7, 2008, Plaintiff asked for another extension of time, until June 9, 2008, to respond to all pending dispositive motions in the case.  (D.E. 27).  The Court GRANTED Plaintiff's request, and Plaintiff's response deadline was re-set to June 9, 2008 (D.E. 28).  However, on June 9, 2008, Plaintiff's counsel failed to respond to the cross-motions for summary judgment.  As of June 17, 2008, Plaintiff's counsel still had not filed responses, nor had Plaintiff's counsel filed any request for an extension of time.  Accordingly, pursuant to Local Rule 7.4, Plaintiff's failure to respond was taken as representation of no opposition to the pending cross-motions for summary judgment.  (L.R. 7.4).

Court held that all of Plaintiff's claims against the Humana Defendants were barred by the doctrine of res judicata, but that there was a genuine issue of material fact as to whether res judicata barred Plaintiff's claims against Prest.   The Court DISMISSED all of Plaintiff's claims against the Humana Defendants, and the Humana Defendants remain in this litigation solely on their cross-claim for costs and attorney's fees.   Prest is the only remaining Defendant in this case, and Prest's motion for summary judgment is currently before the Court.

Prest filed the instant motion for summary judgment on February 4, 2008 (D.E. 23).   Prest argues that Plaintiff's state law claims against Prest should be dismissed as preempted by ERISA Section 514(a), and that Plaintiff's generalized ERISA claims should be dismissed because Prest did not act as a fiduciary in its role as an independent external reviewer of Plaintiff's claim. Prest has submitted evidence in support of its motion for summary judgment, including Humana's request for an external review, and Prest's external review report submitted to Humana.   (See D.E. 23, Exhibits, DX-A through DX-H).

Despite numerous opportunities to do so, Plaintiff never filed a response to Prest's motion for summary judgment.   Plaintiff's response was originally due on February 25, 2008.   However, due to the medical issues of Plaintiff's counsel, Plaintiff was granted an extension until May 9, 2008, to file her response.   (D.E. 26).   On

May 7, 2008, Plaintiff requested another extension of time, until June 9, 2008, to respond to Prest's motion for summary judgment. (D.E. 27). The Court GRANTED Plaintiff's motion for an extension of time, and Plaintiff's response was due on June 9, 2008. (D.E. 28). However, on June 9, 2008, Plaintiff failed to file her response, and as of June 17, 2008, Plaintiff still had not filed any response with the Court. Plaintiff's "[f]ailure to respond will be taken as a representation of no opposition." (L.R. 7.4).

## IV. **Discussion**

### A. **Summary Judgment Standard**

Federal Rule of Civil Procedure 56 states that summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c). The substantive law identifies which facts are material. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Ellison v. Software Spectrum, Inc., 85 F.3d 187, 189 (5th Cir. 1996). A dispute about a material fact is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248; see also Judwin Props., Inc., v. U.S. Fire Ins. Co., 973 F.2d 432, 435 (5th Cir. 1992).

The "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its

motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Wallace v. Texas Tech. Univ., 80 F.3d 1042, 1046-1047 (5th Cir. 1996). If the nonmovant bears the burden of proof on a claim, the moving party may discharge its burden by showing that there is an absence of evidence to support the nonmovant's case. See Celotex Corp., 477 U.S. at 325; Ocean Energy II, Inc. v. Alexander & Alexander, Inc., 868 F.2d 740, 747 (5th Cir. 1989).

Once the moving party has carried its burden, the nonmovant "may not rest upon the mere allegations or denials of his pleading, but ... must set forth specific facts showing that there is a genuine issue for trial." First Nat'l Bank of Arizona v. Cities Serv. Co., 391 U.S. 253, 270 (1968); see also Schaefer v. Gulf Coast Reg'l Blood Ctr., 10 F.3d 327, 330 (5th Cir. 1994) (stating that nonmoving party must "produce affirmative and specific facts" demonstrating a genuine issue).

When the parties have submitted evidence of conflicting facts, "the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." Willis, 61 F.3d at 315. Summary judgment is not appropriate unless, viewing the evidence in the light most favorable to the nonmoving party, no reasonable jury could return a verdict for that party. See, e.g., Rubinstein v. Adm'rs of the Tulane Educ. Fund, 218 F.3d 392, 399

(5th Cir. 2000).

**B.    ERISA Preemption of State Law Claims**

There are two types of ERISA preemption:  conflict, or ordinary preemption under ERISA Section 514, and complete preemption under ERISA Section 502(a).  See 29 U.S.C. §§ 1132(a), 1442(a).

**1.    Complete Preemption**

ERISA "complete preemption" occurs when a state-law cause of action falls within the scope of a particular enforcement provision in ERISA Section 502(a).  See 29 U.S.C. § 1132(a); Arana v. Ochsner Health Plan, 338 F.3d 433, 440 (5th Cir. 2003).[12]  A state-law cause

---

[12]ERISA Section 502(a) states as follows in relevant part: "A civil action may be brought (1) by a participant or beneficiary ... (B) to recover benefits due to him under the terms of his plan, or to clarify his rights to future benefits under the terms of the plan."  29 U.S.C. § 1132(a)(1)(B).

The rationale for complete preemption has been explained as follows:

> [T]he detailed provisions of § 502(a) [29 U.S.C. § 1132(a)] set forth a comprehensive civil enforcement scheme that represents a careful balancing of the need for prompt and fair claims settlement procedures against the public interest in encouraging the formation of employee benefit plans.  The policy choices reflected in the inclusion of certain remedies and the exclusion of others under the federal scheme would be completely undermined if ERISA-plan participants and beneficiaries were free to obtain remedies under state law that Congress rejected in ERISA.

Ingersoll-Rand Co. v. McClendon, 498 U.S. 133, 144 (1990) (internal quotations omitted).

of action falls within the scope of an ERISA Section 502 enforcement provision when a plan participant or beneficiary seeks to recover benefits due or to enforce rights under an ERISA plan. See Transitional Hosps. Corp. v. Blue Cross and Blue Shield of Tex., 164 F.3d 952, 954 (5th Cir. 1999) (state-law claims for breach of fiduciary duty, negligence, equitable estoppel, breach of contract, and fraud are preempted by ERISA when the plaintiff seeks to recover benefits owed under the plan to a plan participant); Mem. Hosp. Sys., 904 F.2d at 245.  When a plan participant or beneficiary sues to recover benefits or enforce rights under an ERISA plan, the plaintiff's state-law causes of action are completely preempted by ERISA Section 502(a).  See Giles v. NYLCare Health Plans, Inc., 172 F.3d 332, 337 (5th Cir. 1999).

### 2.   ERISA "Conflict Preemption"

The second type of preemption under ERISA is referred to as "conflict" or "ordinary" preemption.  Bennett v. Life Ins. Co. of North Am., 398 F.Supp.2d 533, 538 (N.D. Tex. 2005).  Conflict preemption applies when a state law claim falls outside the scope of ERISA Section 502(a), but the claim is still preempted by ERISA Section 514.  See Giles, 172 F.3d at 337.  ERISA Section 514 states that ERISA's provisions "supersede any and all state common laws insofar as they relate to any employee benefit plan".  29 U.S.C. § 1144(a).  "A state law 'relates to' an employee benefit plan 'if it has a connection with or reference to such plan.'"  Reliable Home

Health Care, Inc. v. Union Cent. Ins. Co., 295 F.3d 505, 515 (5th Cir. 2002) (citing Rozzell v. Security Servs., Inc., 38 F.3d 819, 821 (5th Cir. 1994) (citing Shaw v. Delta Air Lines, 463 U.S. 85, 96-97 (1983)).  With regard to Section 514(a), "[t]he Supreme Court has 'observed repeatedly that this broadly worded provision is clearly expansive.'"  Bank Of Louisiana v. Aetna U.S. Healthcare Inc., 468 F.3d 237, 241 (5th Cir. 2006) (citing Egelhoff v. Egelhoff ex rel. Breiner, 532 U.S. 141, 146, (2001) (citing Blue Cross & Blue Shield Plans v. Travelers Ins. Co., 514 U.S. 645, 655, (1995)).[13]

### 3.   Plaintiff's State Law Claims are Preempted by ERISA

In this case, at the very least, all of Plaintiff's state law claims against Prest are preempted by ERISA Section 514.[14]  There

_____

[13]As noted above, the Supreme Court has held that a state law "relates to an ERISA plan if it has a connection with or reference to such a plan." Egelhoff, 532 U.S. at 147 (citing Shaw v. Delta Air Lines, Inc., 463 U.S. 85, 97 (1983)).  However, the Supreme Court has recognized "that the term 'relate to' cannot be taken 'to extend to the furthest stretch of its indeterminacy,' or else 'for all practical purposes pre-emption would never run its course.'" Id. at 146 (citing Travelers, 514 U.S. at 655). The Supreme Court has, accordingly, "declined to apply an 'uncritical literalism' to the phrase and instead takes the 'the objectives of the ERISA statute as a guide to the scope of the state law that Congress understood would survive, as well as to the nature of the effect of the state law on ERISA plans.'" Bank of Louisiana, 468 F.3d at 241 (citing Egelhoff, 532 U.S. at 146-47).

[14]Because all of Plaintiff's state law claims against Prest are preempted by ERISA Section 514, the Court does not reach the issue of whether Plaintiff's state law claims are also completely preempted by ERISA Section 502(a).

is no genuine issue of material fact that Plaintiff's state law claims against Prest "relate to" the ERISA plan purchased by Mike W. Harvey Oil & Gas.  The gravamen of <u>all</u> of Plaintiff's state law claims is that Plaintiff should have received coverage for the August 13 to September 7, 2005 portion of her stay at the Betty Ford Center.  Specifically, Plaintiff complains that Prest did not properly review Plaintiff's claim for coverage, and that Prest's external review should have determined that Plaintiff was entitled to coverage for the disputed portion of her stay.  (<u>See</u>, <u>e.g.</u>, Complaint, ¶ 20, describing Prest's "erroneous decision"; ¶¶ 21, 24, describing Prest's alleged "failure to properly investigate" Plaintiff's situation).   In connection with Prest's alleged conduct, Plaintiff brings state law claims against Prest for misrepresentation, negligence and violation of the Texas DTPA. (<u>Id.</u>, ¶¶ 21, 24).  As set forth below, these claims all relate directly to the Mike W. Harvey Oil & Gas ERISA plan, and they are preempted by ERISA Section 514(a).

### a.   <u>Fifth Circuit Definition of "Relate To"</u>

"In determining whether state law claims 'relate to' a plan, we have commonly asked (1) whether the state law claims address areas of exclusive federal concern, such as the right to receive benefits under the terms of an ERISA plan; and (2) whether the claims directly affect the relationship among the traditional ERISA entities-the employer, the plan and its fiduciaries, and the

participants and beneficiaries." <u>Woods v. Texas Aggregates, L.L.C.</u>, 459 F.3d 600, 602 (5th Cir. 2006); <u>Holloway v. Avalon Residential Care Homes, Inc.</u>, 107 Fed.Appx. 398, 400 (5th Cir. 2004) ("To determine whether a state law claim is preempted, we look to (1) whether the claim addresses areas of exclusive federal concern, and (2) whether the claim directly affects the relationship among traditional ERISA entities."); <u>Hobson v. Robinson</u>, 75 Fed.Appx. 949, 953 (5th Cir 2003) (same).

  b. **<u>Plaintiff's State Law Claims Relate To the ERISA Plan</u>**

  As set forth below, Plaintiff's state law claims against Prest satisfy the Fifth Circuit's test of whether such claims "relate to" an ERISA plan. <u>Woods</u>, 459 F.3d at 602.

  First, Plaintiff's state law claims against Prest address an "are[a] of exclusive federal concern, such as the right to receive benefits under the terms of an ERISA plan". <u>Id.</u>  As noted above, the essence of Plaintiff's state law claims is her allegation that she should have received benefits under the Mike W. Harvey Oil & Gas ERISA plan, and that Prest's "erroneous decision" contributed to Humana's denial of coverage.  (Complaint, ¶ 20).  All of Plaintiff's claims against Prest are fully intertwined with her claim for coverage, and thus her claims address an "are[a] of exclusive federal concern". <u>Id.</u> Plaintiff's state law claims thus meet the first requirement for ERISA conflict preemption.

With regard to the requirement that Plaintiff's state law claims "directly affect the relationship among the traditional ERISA entities", <u>Woods</u>, 459 F.3d at 602, the undisputed facts show that Prest is not a "traditional ERISA entity" in this case.[15] However, Prest's status as a non-traditional ERISA entity does not preclude ERISA conflict preemption under Section 514(a).  This is because, even if one of the parties to a case is not a traditional ERISA entity, ERISA conflict preemption still applies where a state law claim "implicate[s] the [ERISA] plan's administration of benefits".  <u>Hubbard v. Blue Cross & Blue Shield Ass'n</u>, 42 F.3d 942, 947 (5th Cir. 1995) (finding ERISA conflict preemption where defendant was a third-party non-traditional ERISA entity, because the state law claim was "intricately bound up with the interpretation and administration of an ERISA plan"); <u>see also</u> <u>Blum v. Spectrum Rest. Group, Inc.</u>, 2003 WL 1889036, at *6 (E.D. Tex. April 14, 2003) (finding ERISA conflict preemption in a case where the defendant was "not a traditional ERISA entity," because the plaintiff's "state law claims implicate[d] an ERISA plan's administration of benefits"); <u>Karnuth v. S. Cent. United Food & Commercial Workers Union</u>, 1999 WL 354236, at *2 (N.D. Tex. May 28,

---

[15]"Traditional ERISA entities" include plan participants, beneficiaries, employers, plans, plan administrators and fiduciaries.  There is no allegation in this case that Prest was a plan participant, beneficiary, employer, plan or plan administrator.  As discussed below, the undisputed facts show that Prest was not a fiduciary in this situation, as Prest did not have discretionary authority with respect to the plan.

1999) ("where a state-law claim is not asserted against a traditional ERISA entity, the cause of action is preempted only if it implicates an ERISA plan's administration of benefits.").  In this case, Plaintiff's state law claims against Prest implicate the Mike W. Harvey Oil & Gas ERISA plan's administration of benefits. Plaintiff essentially claims that for various reasons, including failure to make a full investigation, Prest made an "erroneous decision" that led to the denial of Plaintiff's benefits. Plaintiff's claims against Prest all implicate the plan's distribution (or failure to distribute) benefits to Plaintiff. Because Plaintiff's state law claims against Prest all implicate the ERISA plan's administration of benefits, the second requirement for ERISA conflict preemption is met, and Plaintiff's state law claims are preempted by ERISA Section 514(a).[16]

---

[16]The Court also notes recent cases that have held that the distinction is not whether a plaintiff asserts a claim against a traditional ERISA entity, but rather whether the state law claim affects an aspect of the relationship between the plaintiff and the defendant that is comprehensively regulated by ERISA.  See, e.g., Bank Of Louisiana, 468 F.3d at 243 ("the critical distinction is not whether the parties to a claim are traditional ERISA entities in some capacity, but instead whether the relevant state law affects an aspect of the relationship that is comprehensively regulated by ERISA."); E.I. DuPont de Nemours & Co. v. Sawyer, 517 F.3d 785, 800 (5th Cir. 2008) (internal citations and quotations omitted) ("With regard to the second element of the preemption test, ... [f]or purposes of ERISA preemption the critical distinction is not whether the parties to a claim are traditional ERISA entities in some capacity, but instead whether the relevant state law affects an aspect of the relationship that is comprehensively regulated by ERISA."). Essentially, these cases hold that "the important factor in ERISA preemption is the relationship between the parties involved

Because Plaintiff's state law claims against Prest are preempted by ERISA Section 514(a), those claims are hereby DISMISSED.

### C.   **Plaintiff's ERISA Claims Against Prest**

Plaintiff brings ERISA claims against Prest under ERISA Sections 502(a)(3) and 502(c).[17]   As set forth below, Prest is entitled to summary judgment on these causes of action.

#### 1.   **ERISA Section 502(a)(3)**

ERISA Section 502(a)(3) states as follows:

A civil action may be brought--

(3)   by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief

---

in the claim itself and whether that claim is intricately bound with an ERISA plan." Hobson v. Robinson, 75 Fed.Appx. 949, 955, 2003 WL 22183558, at *4 (5th Cir. Sept. 23, 2003). In this case, Plaintiff's entire "relationship" with Prest is in an area that is comprehensively regulated by ERISA. Specifically, Prest conducted an independent review of Plaintiff's claim for coverage under an ERISA plan. (Prest External Review Report). The relationship between Plaintiff and Prest thus centers on whether Plaintiff is eligible for ERISA plan coverage. This relationship is in an area that is comprehensively regulated by ERISA and is "intricately bound with an ERISA plan." Id. Plaintiff's state law claims against Prest therefore satisfy the second requirement for ERISA preemption. See Bank of Louisiana, 468 F.3d at 243.

[17]Plaintiff also seeks attorney's fees and costs from Prest under ERISA Section 502(g). Further, it is not clear from Plaintiff's Complaint whether Plaintiff intended to bring a claim against Prest under ERISA Section 502(a)(1)(B). In the event Plaintiff did intend to bring such a claim, the Court hereby addresses ERISA Section 502(a)(1)(B) and holds that Prest is entitled to summary judgment on any Section 502(a)(1)(B) cause of action.

> (i) to redress such violations or (ii) to enforce any
> provisions of this subchapter or the terms of the
> plan[.]

29 U.S.C. § 1132(a)(3).  "Section 502(a)(3) allows a plan participant, beneficiary, or fiduciary to obtain, *inter alia*, 'appropriate equitable relief' to enforce the terms or to remedy violations of an employee-benefit plan." <u>Amschwand v. Spherion Corp.</u>, 505 F.3d 342, 345 (5th Cir. 2007).  There is a two-prong test for relief under Section 502(a)(3).  First, "the nature of the relief sought under § 502(a)(3) be 'typically equitable'".  <u>Id.</u> at 346; <u>see also</u> <u>Mertens v. Hewitt Assocs.</u>, 508 U.S. 248, 256 (1993) (emphasis added) (equitable relief available under Section 502(a)(3) includes "[forms of] relief that were typically available in equity (such as injunction, mandamus, and restitution, <u>but not compensatory damages</u>"); <u>Langbecker v. Elec. Data Sys. Corp.</u>, 476 F.3d 299, 309 (5th Cir. 2007) (an action "for legal restitution" "is not cognizable under § 502(a)(3).").  Second, "the cause of action giving rise to the [Section 502(a)(3)] claim [must] be generically equitable as well." <u>Amschwand</u>, 505 F.3d at 346.  ERISA Section 502(a)(3) does <u>not</u> authorize a claim for money damages. <u>See</u> <u>Great-West Life & Annuity Ins. Co. v. Knudson</u>, 534 U.S. 204, 210 (2002) (internal citations omitted) ("[m]oney damages are, of course, the classic form of legal [and not equitable] relief", and

are not available under Section 502(a)(3).[18]

"[A]ttempts to recharacterize a desired § 502(a)(3) remedy as a purely equitable form of relief, like an injunction, have been consistently rejected." Amschwand, 505 F.3d at 348 (rejecting a plaintiff's attempt to characterize a request for policy proceeds as 'equitable,' where plaintiff asked that the plan be 'enjoined' from withholding benefits); see also Bowen v. Massachusetts, 487 U.S. 879, 915-16 (1988) (Scalia, J., dissenting) ("It does not take much lawyerly inventiveness to convert a claim for payment of a past due sum (damages) into a prayer for an injunction against refusing to pay the sum, or for a declaration that the sum must be paid, or for an order reversing the agency's decision not to pay.").[19]

---

[18]Equitable "restitution" damages are still available under Section 502(a)(3). Great-West, 534 U.S. at 213. However, "[s]uch restitution is limited to situations where the money or property can be 'traced to particular funds or property in the defendant's possession.'" Callery v. U.S. Life Ins. Co. in City of New York, 392 F.3d 401, 406 (10th Cir. 2004) (citing Great-West, 534 U.S. at 213). Further, the defendant must be in possession of the funds the plaintiff seeks as restitution. See Amschwand, 505 F.3d at 348 ("defendant's possession of the disputed res is central to the notion of a restitutionary remedy, which was conceived not to assuage a plaintiff's loss, but to eliminate a defendant's gain."). Plaintiff in this case is not seeking to "regain particular funds or property" held by Defendant Prest. Callery, 392 F.3d at 406. Rather, Plaintiff seeks general reimbursement for funds she expended on her treatment. Plaintiff is not eligible for such compensatory damages under ERISA Section 502(a)(3). See id.; Amschwand, 505 F.3d at 348.

[19]A claim under Section 502(a)(3) may be brought against a non-traditional ERISA entity, including parties that are not fiduciaries as defined by ERISA. See Harris Trust and Sav. Bank

Prest is entitled to summary judgment on Plaintiff's claim under Section 502(a)(3), because Plaintiff does not seek equitable relief from Prest. Rather, Plaintiff seeks "reimbursement" for her treatment at the Betty Ford Center, along with various "damages" for the alleged state law violations committed by Prest. (Complaint, pp. 6-7). Plaintiff does not seek any legitimate equitable relief from Prest in her Complaint. Rather, the only relief that Plaintiff seeks that could be characterized as arguably "equitable" includes Plaintiff's "remand for administrative review of the plans [*sic*] medical necessity decisions, breach of fiduciary duty, penalties, and copies of all plan documents and administrative files". (Complaint, p. 6). Plaintiff essentially seeks a reversal of the medical necessity decision regarding her stay at the Betty Ford Center, leading to coverage for her full course of treatment - *i.e.*, compensatory damages.[20] Plaintiff

─────────────────

v. Salomon Smith Barney, Inc., 530 U.S. 238, 254 (U.S. 2000); Bombardier Aerospace Employee Welfare Benefits Plan v. Ferrer, Poirot and Wansbrough, 354 F.3d 348, 353-54 (5th Cir. 2003) ("§ 502(a)(3) authorizes a cause of action against a non-fiduciary, ... As Harris Trust makes clear, an entity need not be acting under a duty imposed by one of ERISA's substantive provisions to be subject to liability under § 502(a)(3)."); Amschwand, 505 F.3d at 347 ("On its face, § 502(a)(3) defines who may bring an action; it does not condition the scope of recovery on the identity of the defendant. This is not true of other ERISA remedial provisions.").

[20]Any form of allegedly "equitable" relief Plaintiff seeks from Prest would necessarily be geared to a reversal of Prest's external review decision. A further review of records, a further investigation, etc., would all be a vehicle for a reversal of the decision that Plaintiff's treatment was not medically necessary. Plaintiff cannot recharacterize her efforts to have her treatment

cannot seek "equitable" relief in the form of a reversal of the decision that she was not covered, in an effort to obtain benefits from her ERISA plan. See Eichorn v. AT&T Corp., 484 F.3d 644, 655 (3rd Cir. 2007) (rejecting plaintiffs' request for an 'equitable' injunction requiring an employer to adjust its records to create an obligation to pay plaintiffs money, on the grounds that plaintiffs were requesting compensatory relief "not available under § 502(a)(3)."). What Plaintiff seeks from Prest is monetary relief and a reversal of Prest's medical necessity determination. (Complaint, pp. 6-7). Such relief is not available under ERISA Section 502(a)(3), and Prest is entitled to summary judgment on Prest's 502(a)(3) cause of action. See id.

### 2.  ERISA Section 502(c)

With regard to Plaintiff's claim under ERISA Section 502(c), Plaintiff seeks "[a]n order for all appropriate penalties" under this section. (Complaint, p. 6).[21]  Section 502(c) essentially

---

declared medically necessary as "equitable" relief, when such relief would in reality be compensatory monetary damages. See Amschwand, 505 F.3d at 348 (holding that plaintiff could not recharacterize compensatory relief in the form of an "equitable" injunction).

[21]ERISA Section 502(a)(1)(A) provides for a private civil action by a plan participant or beneficiary for the relief provided for in ERISA Section 502(c). ERISA Section 502(a)(1)(A) states that a "civil action may be brought--(1) by a participant or beneficiary--(A) for the relief provided for in subsection (c) of this section". 29 U.S.C. § 1132(a)(1)(A). Subsection (c) addresses an "[a]dministrator's refusal to supply requested information; [and the] penalty for failure to provide [an] annual report in complete form". 29 U.S.C. § 1132(c).

requires a plan administrator to provide the beneficiary with certain requested documents by mailing them within thirty days of a request to do so, at a penalty of up to $100 for each day that the documents are not provided. See 29 U.S.C. § 1332(c)(1).[22] The plan administrator is personally liable for the monetary penalty incurred as a result of failure to timely provide the requested documents. Id. Further, if requested documents are not timely provided, "the court may in its discretion order such other relief as it deems proper." Id.

On its face, ERISA Section 502(c) applies to the plan "**administrator**", not to a third-party organization like Prest. 29 U.S.C. § 1132(c) (making numerous references to the plan "administrator") (emphasis added). As the court stated below in Crowell v. Shell Oil Co., 481 F.Supp.2d 797, 814 (S.D. Tex. 2007), failure to name the plan administrator is fatal to a plaintiff's Section 502(c)(1) claim.

> "The plain and unambiguous language of § 1132(c)(1)
> [Section 502(c)(1)] requires that the plaintiff seek relief
> from the plan administrator, who is personally liable for
> any disclosure violations. The statute makes no provision
> for liability to attach to any other person[.] ...

---

[22]ERISA Section 502(c)(1) states as follows, in relevant part: "Any administrator ... who fails or refuses to comply with a request for any information which such administrator is required by this subchapter to furnish to a participant or beneficiary ... may in the court's discretion be personally liable to such participant or beneficiary [for civil penalties]". 29 U.S.C. § 1132(c)(1).

> Accordingly, the court holds that a plaintiff must name the designated plan administrator as a defendant to recover civil penalties under § 1132(c)(1). **Failure to do so is fatal to the claim.** As ... the plan administrator ... is not a defendant in [plaintiff's] suit, his § 1132(c)(1) [Section 502(c)(1)] claim must be dismissed.

Id. (internal citations omitted) (emphasis added).

In this case, it is undisputed that Prest is not the ERISA plan administrator. ERISA defines the plan administrator as "the person specifically so designated by the terms of the instrument under which the plan is operated." 29 U.S.C. § 1002(16)(A)(i); Fisher v. Metro. Life Ins. Co., 895 F.2d 1073, 1077 (5th Cir. 1990) (citing 29 U.S.C. § 1002(16)(A)(i)) ("ERISA defines 'plan administrator' in the first instance as 'the person specifically so designated by the terms of the instrument under which the plan is operated.'"). It is undisputed that Defendant Prest served as an "independent review organization," conducting a review of Plaintiff's claim for coverage after Humana's initial denial. (Cornelissen Aff., ¶ 5; Prest External Review Report, p. 1). Prest is not named as a plan administrator in any plan documents. (Id.). Because Prest is not the plan administrator, Prest is entitled to summary judgment on Plaintiff's claim under ERISA Section 502(c). See Crowell, 481 F.Supp.2d at 814.[23]

_____

[23]The Court notes that Plaintiff seeks attorney's fees and costs from Prest under ERISA Section 502(g). Under Section 502(g), "[i]n any [ERISA] action ... by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." 29 U.S.C.A. § 1132(g)(1). A party does not have to prevail to be

### 3.    <u>Possible Claim Under ERISA Section 502(a)(1)(B)</u>

Plaintiff does not explicitly bring a claim against Prest under ERISA Section 502(a)(1)(B).  However, Plaintiff does seek "[a]ll benefits due Plaintiff as a result of her treatment at the Betty Ford Center, including reimbursement of all medical expenses, travel expenses, and other out-of-pocket expenses related to this treatment". (Complaint, p. 6).  This request for relief could be construed as a challenge to the denial of ERISA plan benefits under 29 U.S.C. § 1132(a)(1)(B) (ERISA Section 502(a)(1)(B)).  <u>See Duhon v. Texaco, Inc.</u>, 15 F.3d 1302, 1305 (5th Cir. 1994); <u>McCall v. Burlington Northern/Santa Fe Co.</u>, 237 F.3d 506, 512 (5th Cir. 2000) (internal quotations and citations omitted) ("ERISA [Section 502(a)(1)(B) authorizes a civil action by a participant to recover benefits due to him under the terms of his plan.").  To the extent Plaintiff intended to bring a claim under ERISA Section

---

awarded costs and fees under Section 502(g).  <u>See</u> <u>Gibbs v. Gibbs</u>, 210 F.3d 491, 503 (5th Cir. 2000).  The awarding of attorney's fees in an ERISA case is purely discretionary, pursuant to the five factors enumerated in <u>Iron Workers Local No. 272 v. Bowen</u>, 624 F.2d 1255, 1266 (5th Cir. 1980).  <u>See</u> <u>Todd v. AIG Life Ins. Co.</u>, 47 F.3d 1448, 1458 (5th Cir. 1995).  These <u>Bowen</u> factors include the degree of the defendant's culpability or bad faith, defendant's ability to satisfy a fee award, the deterrence value of a fee award, whether plaintiff brought the action to benefit all participants of an ERISA plan or to resolve a significant ERISA legal question, and the relative merits of the parties' positions.  <u>Bowen</u>, 624 F.3d at 1458.  Applying the five <u>Bowen</u> factors to this case, especially regarding Prest's lack of culpability and bad faith and the relative merits of the parties' positions, the Court in its discretion declines to award attorney's fees and costs to Plaintiff under ERISA Section 502(g).

502(a)(1)(B), Prest is entitled to summary judgment on any such claim brought by Plaintiff.[24]

ERISA Section 502(a)(1)(B) provides that "[a] civil action may be brought -- (1) by a participant or beneficiary -- ... (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). ERISA Section 502(a)(1)(B) is a contract based cause of action. See Estate of Bratton v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA, 215 F.3d 516, 523 (5th Cir. 2000) ("ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), provides a contract based cause of action to participants and beneficiaries to recover benefits, enforce rights, or clarify rights to future benefits, under the terms of an employee benefit plan.").

"Numerous courts have recognized that 'there is a split in authority' concerning whether 'the ERISA plan itself is the only proper party defendant on a claim pursuant to ERISA 502(a)(1)(B).'" Carroll v. United of Omaha Life Ins. Co., 378 F.Supp.2d 741, 746 (E.D. La. 2005) (citing Hall v. Lhaco, Inc., 140 F.3d 1190, 1194 (8th Cir. 1998)); Mello v. Sara Lee Corp., 292 F.Supp.2d 902, 906 (N.D. Miss. 2003) ("This debate [as to the proper defendant on an

_____

[24]As set forth above, Plaintiff does not specifically bring an ERISA Section 502(a)(1)(B) claim against Prest in her Complaint. However, Plaintiff's Complaint is very unclear, and in an abundance of caution, this Court hereby addresses and DISMISSES any Section 502(a)(1)(B) claim that Plaintiff did seek to bring against Defendant Prest.

ERISA Section 502(a)(1)(B) claim] reflects a circuit split."); Blum
v. Spectrum Rest. Group, Inc., 261 F.Supp.2d 697, 707-08 (E.D. Tex.
2003) ("There is a split in authority regarding whether a plan is
the only proper defendant in a suit to recover benefits under
ERISA."). The court in Mello, 292 F.Supp.2d at 906, described the
circuit split as follows:

> The side taking the position that only the ERISA plan is a
> proper defendant gains its force from Gelardi v. Pertec
> Computer Corp., 761 F.2d 1323 (9th Cir. 1985) and its
> progeny. The other side, holding that in addition to the
> actual plan, the plan administrator and whoever else
> controls the administration of the plan can be proper
> defendants under §§ 502(a)(1)(B) and (d)(2) has been
> represented by cases such as Mein v. Carus Corporation, 241
> F.3d 581 (7th Cir. 2001); Layes v. Mead Corp., 132 F.3d
> 1246, 1249 (8th Cir. 1998); Taft v. Equitable Life
> Assurance Soc'y, 9 F.3d 1469, 1470 (9th Cir. 1993); Garren
> v. John Hancock Mut. Life. Ins. Co., 114 F.3d 186, 187
> (11th Cir. 1997); Daniel v. Eaton Corp., 839 F.2d 263, 266
> (6th Cir. 1988).

Mello, 292 F.Supp.2d at 906. The Fifth Circuit has not explicitly
ruled on this issue.[25]

---

[25]The Fifth Circuit did analyze this issue in Musmeci v.
Schwegmann Giant Super Markets, Inc., 332 F.3d 339 (5th Cir.
2003), cert. denied, 540 U.S. 1110, 124 S.Ct. 1078, 157 L.Ed.2d
898 (2004). In Musmeci, the Fifth Circuit stated as follows:

> While the language [in ERISA Section 502(a)(1)(B)]
> suggests that the plan is the only proper party
> defendant, other Circuits have allowed employees to
> maintain actions against their employers for the denial
> of benefits [in cases where] ... it was the employer's
> decision to deny benefits ... and when the employer is
> the plan administrator or sponsor.

Id. at 349. The Fifth Circuit in Musmeci found that the employer
was a proper defendant in the Section 502(a)(1)(B) action,
because the employer basically served as the plan administrator
and plan sponsor, and it was "undisputably" the employer's

Regardless of whether the plan itself is the only proper defendant in a Section 502(a)(1)(B) action, the proper defendant must be one with "ultimate authority to determine eligibility for benefits" and the "final decision[maker]" as to a benefits eligibility determination." <u>Carroll</u>, 378 F.Supp.2d at 747 (holding that "[b]ecause it was not [plaintiff's employer's] final decision to determine [plaintiff's] benefits, ... [plaintiff's employer] is not a proper party defendant" in an ERISA Section 502(a)(1)(B) action).

Based on the undisputed facts in this case, under either side of the circuit split, Prest is not a proper defendant in an ERISA Section 502(a)(1)(B) action.  Prest is not the plan itself or the plan administrator.  Further, Prest did not have the authority to determine Plaintiff's eligibility for benefits under the ERISA plan, nor was Prest the final decisionmaker as to Plaintiff's benefits eligibility. <u>See</u> <u>Musmeci</u>, 332 F.3d at 349; <u>Carroll</u>, 378 F.Supp.2d at 747.  It is undisputed that Prest was an "independent review organization" that conducted an independent records review of Humana's decision to deny Plaintiff coverage for part of her

---

decision to withhold benefits from the plaintiffs.  <u>Id.</u>  The significant factor in the <u>Musmeci</u> case was that the employer had the ultimate decisionmaking authority as to whether the plaintiff was entitled to benefits under the plan.  <u>See</u> <u>Carroll</u>, 378 F.Supp.2d at 747 ("<u>Musmeci</u> allowed a suit against an employer to proceed because it was the employer's decision to deny benefits.").  The Court notes that the decision in <u>Musmeci</u> was limited to its facts, and the Fifth Circuit did not specifically decide the issue of a proper defendant in a Section 502(a)(1)(B) action.  <u>See</u> <u>Musmeci</u>, 332 F.3d at 349.

stay at the Betty Ford Center.  (Request for External Review; Prest
External Review Report; Cornelissen Aff., ¶ 5).  Prest conducted an
external review of Humana's coverage decision, but the final
decision regarding Plaintiff's coverage remained with <u>Humana</u>, not
Prest.  Specifically, in its request for an external review, Humana
wrote to Prest that "Your response to the following questions
[regarding Plaintiff's treatment] ***will assist <u>Humana</u> in making
determinations*** which are consistent with [Plaintiff's] applicable
contractual language."   (Request for External Review, p. 3)
(emphasis added).   Humana also wrote that "[t]he information
provided for your review is sent solely for the purpose of review
of this/these service(s) ***and to assist <u>us</u>*** in <u>**our**</u> claims
determination."  (<u>Id.</u>, p. 4) (emphasis added).  Further, Prest's
report does not make any recommendations regarding Plaintiff's
coverage.  (Prest External Review Report).  Rather, Prest's report
indicates that under the criteria of the Texas Administrative Code
for Alcohol and Drug Addition (TCADA), Plaintiff could have safely
been treated in an outpatient setting for the disputed portion of
her treatment.  (<u>Id.</u>, p. 2).  Prest did not deny Plaintiff coverage
or even recommend that Humana deny Plaintiff coverage.  (<u>Id.</u>).
While Humana may have been influenced by or considered Prest's
review report, Prest's role was to "assist" Humana, and the final
decision on Plaintiff's coverage remained with Humana.  (Request
for External Review, pp. 3-4).  Because Prest did not have the

authority to determine Plaintiff's benefits eligibility and was not the final decisionmaker with respect to Plaintiff's coverage, Prest is not a proper Defendant under ERISA Section 502(a)(1)(B).  See Musmeci, 332 F.3d at 349; Carroll, 378 F.Supp.2d at 747.[26] Accordingly, Prest is entitled to summary judgment any ERISA Section 502(a)(1)(B) cause of action that Plaintiff intended to bring against Prest.

## V.   **Conclusion**

For the reasons set forth above, the Court hereby GRANTS Prest's motion for summary judgment (D.E. 23) on all of Plaintiff's claims against Prest.  All of Plaintiff's state law claims against Prest are preempted by ERISA Section 514(a), and Prest is entitled to summary judgment on Plaintiff's ERISA causes of action.  All of Plaintiff's claims against Prest are hereby DISMISSED.  Prest's

---

[26]Also of note, a proper defendant in an ERISA Section 502(a)(1)(B) action must also be one who is responsible for paying out benefits under the ERISA plan.  See Cooksey v. Metro. Life Ins. Co., 2004 WL 1636973, at *3 (N.D. Tex. June 17, 2004) ("Because Kroger is not responsible for paying ... benefits under the Kroger Plan, Kroger is not a proper Defendant to a [Section 502(a)(1)(B)] claim for benefits under the Kroger Plan."); Metro. Life Ins. Co. v. Palmer, 238 F.Supp.2d 826, 830 (E.D. Tex. 2002) (finding that a participant's employer was not a proper defendant in a Section 502(a)(1)(B) action, where "[u]nder the express terms of the Plans, MetLife has the obligation to process and pay the proceeds.").  In this case, it is undisputed that Prest was only an independent review organization that conducted a record review of Plaintiff's claims.  (Request for External Review, Cornelissen Aff., ¶ 5; Prest External Review Report).  If Humana granted Plaintiff coverage for the disputed portion of her stay, Prest would not be the source of the funds.  (Id.).  Accordingly, Prest is not the proper defendant in an ERISA Section 502(a)(1)(B) cause of action.

counter-claim against Plaintiff for attorney's fees and costs under ERISA Section 502(g) (D.E. 5) remains pending.

SIGNED and ENTERED this 17th day of June, 2008.

_____
Janis Graham Jack
United States District Judge